664 A.2d 96

**Leslie Ann JOHNSON, Appellant,**

v.

**George L. BEANE and State Auto Mutual
Insurance Company, Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided Aug. 22, 1995.

450

Richard C. Angino, Harrisburg, for L.A. Johnson.

F. Lee Shipman, Harrisburg, for G.L. Beane and State Farm Mutual.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE, MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This case requires us to determine the effect of payment received by an injured accident victim from her own underinsured motorist carrier on any claims the *victim* has against the tortfeasor. For the reasons enumerated herein, we hold that when an injured party is fully compensated for a particular loss by her underinsurance carrier, her right to sue the tortfeasor is extinguished. By operation of law, the underinsurance carrier acquires the right to sue the tortfeasor to recover the amount it paid its insured.

A recitation of the complex factual scenario allows a better understanding of the case. On August 25, 1985, Appellant Leslie Ann Johnson and Appellee George L. Beane were involved in an automobile accident. Beane admitted liability but his insurance company, Appellee State Auto Mutual Insur-

ance Company, (State Auto), refused to settle for the policy limit of $25,000. The case went to trial on the issue of damages and the jury returned a verdict of $200,000 in Appellant's favor. Appellant requested $175,000 from her underinsured motorist carrier, Erie Insurance Group, (Erie).[1] No agreement was reached and Appellant filed a Petition to Compel Underinsured Motorist Arbitration.

In the meantime, on July 13, 1987, the trial court ruled on Beane's post-trial motions and ordered a remittitur reducing the verdict to $75,000 or, alternatively, if the remittitur was not accepted, granting Beane's motion for a new trial. No appeal was taken and Appellant filed a praecipe to enter judgment on July 30, 1987. State Auto paid the $25,000 policy limit. Appellant agreed to settle with Erie for the remaining $50,000 of the judgment and Appellant executed a Release and Agreement which states in pertinent part:

... In consideration of such payment, I agree as follows: 1) to subrogate Erie Insurance Exchange/Erie Insurance Company to my right of recovery against any person or party legally liable to me for the amount of and for the purpose of the payment noted above; 2) that I have not and will not make any separate settlement with nor give any separate release to any person or parties who caused or alleged to have caused me the above mentioned loss or accident; 3) to authorize my attorneys, Angino & Rovner, P.C., to proceed with a bad faith/excess action against State Auto; and 4) to cooperate in prosecuting said action.

It is my understanding that Erie has agreed to advance any out-of-pocket expenses reasonably necessary to prosecute the bad faith/excess action against State Auto and if said action is successful Erie has agreed to pay its pro rata share of attorneys fees and expenses as per the contingent fee agreement entered into by Angino & Rovner, P.C. and myself. ...

Appellant thereafter received the $50,000 from Erie. Although Erie initially intended to join with Appellant in bring-

1. Appellant had purchased $100,000 of underinsured motorist coverage per vehicle.

ing a bad faith action against State Auto, it decided not to pursue the matter any further. By letter of February 12, 1988, Appellant's counsel advised Erie of its understanding that Erie was waiving its subrogation interest and requested that Erie advise him immediately if his understanding was incorrect. Erie did not respond to the letter.

Appellant subsequently commenced the instant "bad faith garnishment action" against Beane's insurer, State Auto, by filing a Writ of Execution for $50,000 plus interest based upon the existing judgment against Beane, naming State Auto as garnishee.[2] Appellant alleged that State Auto had acted in

---

**2.** There is no basis in law for such a procedure since State Auto does not owe money to Beane, nor does it have in its possession assets belonging to Beane. State Auto fulfilled its contractual obligation and paid the limits of its policy. There is therefore nothing in the hands of State Auto which is subject to garnishment. Beane's right to bring an action for bad faith refusal to settle is not a debt, but an unliquidated claim. The alleged debt is contingent upon proof that State Auto had breached some duty to Beane in failing to settle.

We assume the concept of a "bad faith garnishment action" originated in the federal case of *Shaw v. Botens*, 403 F.2d 150 (3rd Cir.1968). The common pleas court cited this decision in its denial of State Auto's motion to dismiss. *Shaw* involved an action under the Pennsylvania Wrongful Death and Survival Act for the death of an individual killed while a passenger in a car driven by the defendant. A judgment for the plaintiff was entered which exceeded the limit of the defendant's insurance policy. The defendant was represented by his insurer's counsel, who had refused to settle for the policy limits. Plaintiff filed a praecipe for writ of execution against defendant, naming defendant's insurer as garnishee.

The *Shaw* court permitted the garnishment action and expressly held that the Pennsylvania garnishment proceeding is available to determine the validity of an alleged claim of a judgment debtor against the garnishee-insurer. *Id.* at 155. The federal court, however, noted that there were no Pennsylvania cases on point and thus it was predicting how our court would rule on the issue based on our previous related case law. The *Shaw* court's prediction was inaccurate.

Great emphasis was placed on our decision in *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966), where we held that the failure of an insurer to comply with its obligation to act in good faith and with due care in representing the interests of the insured constitutes a breach of a contractual obligation for which an action in assumpsit will lie. We further held in *Gray* that this contractual obligation is assignable by the insured to a plaintiff who secured a judgment in a personal injury action against the insured. In *Gray*, however, unlike *Shaw* and the instant case, there was an actual assignment of the cause of action from the judgment debtor/insured to the

bad faith in dealing with Beane by failing to settle the claim for the policy limits.[3] State Auto filed a motion for summary judgment which the trial court denied, finding that there were genuine issues of material fact for a jury to weigh in determin-

judgment creditor. The *Shaw* court improperly extended *Gray* to circumstances where an actual assignment of the cause of action from the judgment debtor to the judgment creditor has not occurred.

Beane could have expressly *assigned* his bad faith claim to Appellant pursuant to *Gray v. Nationwide Mut. Ins, Co.*, 422 Pa. 500, 223 A.2d 8 (1966). Had that suit been successful, Appellant would have merely executed on the judgment rather than initiated a garnishment proceeding.

Curiously, however, State Auto never objected to the proceedings on these grounds.

3. Although State Auto did not challenge the validity of the action on these grounds, and we are thus precluded from deciding the case on this basis, *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 214–15, 489 A.2d 1291, 1296 (1985), we question whether a judgment creditor can in fact bring a civil bad faith action against a judgment debtor's insurer since the latter owes no duty to the judgment creditor and has no contractual relationship with her. There is no authority, statutory or otherwise, sanctioning such a cause of action.

There is no common law remedy in Pennsylvania for bad faith on the part of insurers. *Terletsky v. Prud. Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688, 437 Pa.Super. 108, 124 (1994). However, the Pennsylvania legislature created a statutory remedy in 42 Pa.C.S. § 8371, which became effective on July 1, 1990. Although this provision is inapplicable to the instant case since the alleged bad faith occurred prior to its enactment, it is relevant to establish that the legislature, when promulgating the bad faith statute, did not provide for a third party action.

The only statute in this Commonwealth providing for a direct action by an injured third party against the insurer of an alleged tortfeasor, the Act of May 24, 1933, P.L. 987, § 1, 40 P.S. § 117, provides for such direct action solely upon the bankruptcy or insolvency of the insured and only for an amount not exceeding the policy limits.

Moreover, Appellant does not satisfy the requirements for being designated as a third party beneficiary of the insurer's obligation to act in good faith. *See, Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983). An obligation of an insurer to act in good faith in dealing with its insured is not intended to benefit one injured by the insured. State Auto's duty to act in good faith in the investigation, negotiation, and settlement of the claim runs only to Beane. There is no relationship between State Auto and Appellant which would warrant extending the duty of good faith settlement to include Appellant. *Strutz v. State Farm Mut. Ins. Co.*, 415 Pa.Super. 371, 609 A.2d 569 (1992). Absent a statute or express contractual provisions sanctioning the action, other courts have not recognized this right. *See generally*, Annotation, *Right of Injured Person Recovering Excess Judgment Against Insured To Maintain Action Against Liability Insurer For Wrongful Failure To Settle Claim*, 63 A.L.R.3d 677.

ing whether State Auto acted in bad faith. The court further found that the recovery from Erie was from a collateral source and was irrelevant to the proceedings.

A jury trial was held which resulted in a mistrial. State Auto filed a second motion for summary judgment which was again denied. On February 25, 1991, State Auto filed a petition for a rule to show cause why the judgment entered against Beane should not be marked satisfied and the garnishment proceeding should not be dismissed without prejudice. The trial court then issued an opinion and order dismissing the garnishment proceeding, holding that Appellant effectively assigned her right to recover to Erie in exchange for payment of the entire sum due her.

The Superior Court affirmed in an opinion by Judge Popovich, with Judge Johnson concurring and Judge McEwen dissenting. The lead opinion held that because Appellant was paid the full amount of the remitted verdict in exchange for subrogating her right of recovery to Erie, Erie acquired the right to pursue any action against State Auto. The majority also found the collateral source rule inapplicable since a judgment in Appellant's favor had already been rendered and her receipt of payment from her underinsurer did not diminish the amount to which she was entitled.

In his concurring opinion, Judge Johnson found that the claim against State Auto was subrogated to Erie on the basis that Erie had paid the entire remainder of the judgment, regardless of whether the "agreement" between Appellant and Erie would have also conferred the right.

Judge McEwen dissented, noting that the judgment against Beane was not satisfied since the payment by Erie was from a collateral source. He concluded that Erie would have a claim in subrogation against any monies subsequently recovered by its insured (Appellant) from the tortfeasor (Beane).

Appellant first contends that the collateral source rule prohibits Beane and State Auto from benefiting from the payments she received from Erie. She argues that a tortfea-

sor should not enjoy the benefits of a policy for which the injured victim paid a separate premium.

The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. *See generally, Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350 (1984). The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong.

Although we reaffirm the collateral source rule in general, we find it inapplicable to the instant case since the tortfeasor's liability is not being reduced. When the $25,000 policy limit was paid by State Auto, the outstanding judgment of $75,000 was reduced to $50,000. By accepting the $50,000 underinsurance benefits from Erie, Appellant did not reduce the *amount* of the tortfeasor's liability. Beane is still liable for $50,000. The question becomes *to whom* is he liable. Because we are not dealing with a situation where the liability of a tortfeasor is being reduced or extinguished, the collateral source rule does not apply.

We must next determine whether Appellant can commence any further action against the tortfeasor. The Superior Court held that there was no debt owing from Beane to Appellant since Appellant had been fully compensated by Erie. We agree. Specifically, we agree with Judge Johnson's concurring opinion which held that regardless of the language contained in the Release and Agreement, Appellant's claim passed to Erie by virtue of the fact that Erie paid the remainder of the judgment.

The goal of subrogation is to place the burden of the debt upon the person who should bear it. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he is subrogated. *Allstate Insurance Company v. Clarke*, 364 Pa.Super. 196, 201, 527 A.2d 1021, 1024 (1987). As subrogee, Erie now stands in the

shoes of Appellant and may pursue an action to recover the amount it paid to Appellant. It is of no moment to Appellant if Erie decides not to pursue its right of recovery.

The cases relied upon by Appellant for the proposition that the subrogor may still maintain an action against the tortfeasor are distinguishable. *Associated Hospital Service of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d 1332 (1979), *vacated on other grounds*, 497 Pa. 221, 439 A.2d 1149 (1981) (Blue Cross/Blue Shield subrogation); *Furia v. Philadelphia*, 180 Pa.Super. 50, 118 A.2d 236 (1955) (subrogation claim of city to recover wage payments made to injured police officer); *Demmery v. N.U.F. Insurance Company*, 210 Pa.Super. 193, 232 A.2d 21 (1967) (insurer's medical expense subrogation); and, *Walls v. City of Pittsburgh*, 292 Pa.Super. 18, 436 A.2d 698 (1981) (uninsurer subrogation). Appellant suggests that injured victim subrogors in those cases have standing and the right to pursue the tortfeasor.

Appellant fails to realize, however, that the injured parties in the aforementioned cases were *not fully compensated* at the time they received their collateral benefits. The insured under those circumstances could recover proceeds in excess of the amount it recovered from its insurer either because there was a deductible amount that had not been paid by the insurance company and/or because the full amount of damages arising from the accident had not yet been determined when the insurer remitted payment.

In summary, because Appellant has received the full value of the remitted verdict, she has no claim to pursue. Accordingly, the order of the Superior Court affirming the dismissal of Appellant's garnishment action is hereby affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

CAPPY, J., files a concurring opinion.

MONTEMURO, J., concurs in the result.*

* Mr. Justice Montemuro is sitting by designation.

CAPPY, Justice, concurring.

I concur in the result offered by the Majority and write separately to disassociate myself from the discussion contained within footnotes two and three. Specifically, I am troubled by the lengthy discussion in these footnotes concerning issues never raised in this case.

This Court has steadfastly refused to "review questions that were neither raised, tried, nor considered in the trial court." *Dollar Bank v. Swartz*, 540 Pa. 369, 657 A.2d 1242 (1995) (citing *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 214–215, 489 A.2d 1291, 1296 (1985).) In these footnotes, the Majority, in my view, makes errors and draws conclusions about unsettled areas of law.

For example, in footnote two the Majority claims that "[t]here is no basis in law for a [bad faith garnishment action].... " Op. at p. 453. Although this Court has never addressed this issue and does not now have the opportunity to address it here because the issue was not raised, this type of action has been recognized by the lower courts of our Commonwealth. *See, e.g., Shearer v. Reed,* 286 Pa.Super. 188, 428 A.2d 635 (1981). Thus, the statement that there is "no basis in law" for this action is plainly inaccurate. The Majority's statement in footnote three that "[t]here is no common law remedy in Pennsylvania for bad faith on the part of insurers" is also an incorrect assessment of law. Granted, a common law action for bad faith based on *tort* law was rejected by our Court. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company,* 494 Pa. 501, 431 A.2d 966 (1981). Yet, for almost four decades, we have recognized a common law action for bad faith sounding in *contract. Cowden v. Aetna Casualty and Surety Company,* 389 Pa. 459, 134 A.2d 223 (1957) (recognizing bad faith action against insurance company for failure to settle within policy limits).

Furthermore, I am troubled by the Majority's disposition in these footnotes of certain issues on which this Court has not spoken definitively. For example, in footnote two, the Majority cites *Gray v. Nationwide Mutual Insurance Co.,* 422 Pa.

500, 223 A.2d 8 (1966) for the proposition that an actual assignment from Beane to Johnson was required here. In *Gray,* the tortfeasor had in fact assigned his bad faith cause of action against his insurance company to the injured party; *Gray* did not, however, mandate such an assignment. Furthermore, I am uncertain as to the applicability of *Gray* since the cause of action in *Gray* was one in *assumpsit,* and thus a direct action, rather than *garnishment* as was the case here. It would seem that this distinguishing fact may indeed be critical and render *Gray* inapplicable under the present facts even if the issue had been raised here.

It is beyond peradventure that the Majority's discussion in footnotes two and three is dictum and devoid of precedential authority. Thus, in my view, these footnotes do not constitute a change in the law of this Commonwealth as to the validity of garnishment actions for bad faith claims.