## Shankweiler v. Regan

C.P. of Delaware County, no. 99-6101.

*Andrew E. DiPiero Jr.,* for plaintiffs.
*James C. Haggerty, Suzanne Tighe, Paul A. Nappi* and *Michael Pastino,* for defendants.

BURR, *J.,* September 5, 2002—The plaintiffs, William and Donna Shankweiler, have appealed from the order of this court granting the defendants' post-trial motion and molding the jury's verdict downward from $50,300 to $300, so as to reflect the settlement of $50,000 accepted by the plaintiffs during pretrial underinsured motorist arbitration proceedings. Judgment has been entered in favor of the plaintiffs and against the defendants in the amount of $300, consistent with the order granting defendants' post-trial motion, plus delay damages in the amount of $4,124.75, on plaintiffs' praecipe, filed August 8, 2001. On November 28, 2001, plaintiffs' insurer, The Employees Mutual Insurance Company (EMCASCO), was given leave of court to intervene in this matter for the purpose of preserving any claims it may have for reimbursement of monies paid to the plaintiffs.

This action arose from a motor vehicle collision that occurred when plaintiffs' 1989 Nissan was struck from behind by the defendants' 1979 Dodge Aspen while plaintiffs' vehicle was stopped for a red traffic signal at the intersection of West Chester Pike and Park Avenue in Upper Darby, Delaware County, Pennsylvania, at approximately 4 p.m., on May 13, 1997. Husband-plaintiff claimed that he suffered injuries to his back and extremities in the collision, including herniated lumbar discs, lumbosacral/cervical strain and sprain, and left-sided radiculopathy or radiating pain and numbness in the left leg caused by injury to the nerve root coming out of the spine. Wife-plaintiff asserted a claim for loss of consortium. At the time of the accident, the defendants were insured under a personal automobile policy

issued by Allstate Insurance Company pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §1701 et seq., providing for $25,000 in liability coverage. The plaintiff, William Shankweiler's, personal automobile policy with EMCASCO included underinsured motorist coverage. Prior to trial, plaintiffs submitted a claim for the recovery of those benefits from EMCASCO, and on October 23, 2000, without submitting the matter to arbitration to determine the merits thereof, EMCASCO tendered and paid the policy limit of $50,000 in underinsured motorist benefits for injuries sustained by Mr. Shankweiler in this accident. (See "agreement and policy release," exhibit A to defendants' motion for post-trial relief.)

Plaintiffs presented evidence at trial that the car husband-plaintiff was driving was situated approximately eight feet behind another vehicle while stopped at the intersection and, when struck by the defendants' vehicle, moved forward only one or two feet. (3/26/01 N.T. 80-81, 103.) Husband-plaintiff said, however, that he had been "jarred pretty good" by the impact, but did not strike any portion of the interior of the car. (3/26/01 N.T. 81.) Husband-plaintiff related that he told the investigating police officer that he was "okay," and that he had driven home from the scene in his car. (3/26/01 N.T. 109-10.) In reference to a photograph taken by the defendants of his vehicle, husband-plaintiff agreed that damage to the car in the accident was "pretty minor." (3/26/01 N.T. 81; trial exhibit D-3.) Husband-plaintiff testified that he had seen his family doctor, Dr. Brian Fredrich, two days after the accident, and had treated with him thereafter, first attending physical therapy sessions for about

four weeks, and taking aspirin and anti-inflammatory painkillers as needed. (3/26/01 N.T. 76-91.) Husband-plaintiff said that he had treated with Dr. Fredrich only intermittently for back pain during the following year. (3/26/01 N.T. 89.) He then complained, in July of 1998, that back pain was causing him difficulty in getting out of bed and that he was suffering from numbness and tingling in his left leg. (3/26/01 N.T. 89-91.) Husband-plaintiff was prescribed the same conservative treatment he had undergone in the past at the direction of Dr. Fredrich. (3/26/01 N.T. 89-91.) On December 23, 1998, husband-plaintiff presented to Dr. Fredrich with more intense back pain, this time resulting from a fall that was attributed in Dr. Fredrich's records to "roller-blading," although plaintiffs vehemently denied that husband-plaintiff has ever rollerbladed in his life. (3/26/01 N.T. 91-93, 201.)

Thereafter, husband-plaintiff reported to Dr. Fredrich in May of 1999 that he was suffering from severe back pain, and was referred to Dr. Richard Levenberg, an orthopedic surgeon. (3/26/01 N.T. 94-95.) An MRI of husband-plaintiff's spine showed lumbar disc herniations at the L4-5 and L5-S1 levels. (3/26/01 N.T. 95, 179.) Dr. Levenberg performed surgery to remove the ruptured discs on June 28, 1999, with husband-plaintiff's condition thereafter reported as "greatly" improved. (3/26/01 N.T. 96-97, 100-101.) Plaintiffs presented the expert opinions of Drs. Fredrich and Levenberg, that these disc herniations were caused by this accident. (3/26/01 N.T. 123-68, 168-97.) Defendants presented contrary expert testimony from Dr. Steven Gollomp, a neurologist, who testified that, while

it was his understanding that husband-plaintiff had suffered an injury in this accident, it was his opinion that the disc herniation had been caused by the alleged fall while rollerblading in December of 1998. (3/26/01 N.T. 224-26.) Plaintiffs presented the testimony of wife-plaintiff to provide grounds for her claim of loss of consortium, and a stipulation of the parties that husband-plaintiff's wage loss claim amounted to $12,860. (3/26/01 N.T. 198, 199-206.)

Defendants admitted that Mr. Regan's negligence caused this accident, and both plaintiffs' and defendants' experts agreed that husband-plaintiff had suffered some injury therein. (3/27/01 N.T. 51.) Therefore, the jury was directed to answer "yes" to the interrogatory as to whether the admitted negligence of the defendant was a substantial factor in bringing about Mr. Shankweiler's injuries, and to decide the issue of damages alone. (3/27/01 N.T. 51, 57.) The court instructed the jury that if it found that damages were awardable from this accident, that plaintiffs were entitled to receive those which would "fairly and reasonably compensate them for all of the physical and financial injury suffered." (3/27/01 N.T. 51.) The jury awarded husband-plaintiff damages in the amount of $50,300, and awarded no damages on wife-plaintiff's claim for loss of consortium. The wife-defendant, Madeline Regan, has since been dismissed from this action by agreement of the parties.

The defendant, Michael Regan, submitted a timely-filed motion for post-trial relief seeking a molding of the jury's verdict to reflect the payment of $50,000 to plaintiffs under their underinsured motorist coverage with EMCASCO. The asserted grounds for this relief

were Pennsylvania's "one satisfaction" rule, prohibiting more than one recovery for injuries claimed in this accident, and collateral estoppel. Plaintiffs countered this assertion by stating that molding of the verdict would impermissibly reward the defendant wrongdoers, and violate the "collateral relief" rule barring consideration of insurance benefits previously conferred in the calculation of damages to be awarded, and that defendants had waived this plea for relief by failing to raise it before the conclusion of trial. The court, after a hearing on defendants' motion for post-trial relief entered the following order disposing of that motion, of defendants' motion for leave to amend their answer and new matter, and of plaintiffs' motion for delay damages:

"And Now, July 18, 2001, having considered the following motions and the responses thereto, as well as the memoranda of law submitted in support thereof, and oral argument having been heard as to defendants' prayer for post-verdict relief, it is hereby Ordered and Decreed that the defendants' motion for post-trial relief is Granted, and that the Verdict awarded by the jury to the plaintiffs in the above-captioned matter is hereby Molded to the sum of $300, so as to reflect the amount of Underinsured Motorists Insurance coverage already provided to the plaintiffs by their motor vehicle insurance carrier.

"It is further Ordered and Decreed that defendants' motion for leave to amend their answer and new matter is Granted with the exception of the addition of the defense of collateral estoppel.[1] Plaintiffs' motion to

1. The defense of collateral estoppel is available in this context only where there has been prior litigation and decision of a damages claim

strike defendants' motion for post-trial relief is hereby Dismissed as Moot.

"Finally, it is hereby Ordered and Decreed that plaintiffs' petition for delay damages is Granted, and that said damages are to be calculated on the amount of the jury's unmolded verdict of $50,300 in favor of the plaintiffs. It is further Ordered that plaintiffs' motion to strike defendants' response to plaintiffs' petition for delay damages is Dismissed as Moot, and that plaintiffs' bill of costs will remain in abeyance pending the conclusion of all litigation in this case."

There is no appeal by the defendants from the award of delay damages to the plaintiffs. However, the plaintiff, William Shankweiler, has appealed from the court's granting of defendants' requests to mold the verdict, and to amend the pleadings as set forth in the order, and submits the following lengthy exposition of issues as his statement of matters complained of on appeal:

"(1) . . . It is the plaintiff/appellant's contention that this honorable court erred in granting defendants' motion for post-trial relief and otherwise molding the verdict. Rule 227.1 of the Pennsylvania Rules of Civil Procedure specifically states that post-trial relief may not

before a panel of arbitrators. *Incollingo v. Maurer,* 394 Pa. Super. 352, 356, 575 A.2d 939, 940-41 (1990); *Phillip v. Clark,* 385 Pa. Super. 229, 233, 560 A.2d 777, 779 (1989). Plaintiffs' settlement with their insurance carrier for the available policy limits of underinsured motorist coverage was not the product of litigation, and cannot serve as grounds for collaterally estopping the issue of damages sub judice. It is clear in the law, however, that the jury's award of damages, following the foregoing presentation of plaintiffs' evidence in that regard, would collaterally estop further litigation of that issue. *Incollingo v. Maurer, supra; Phillip v. Clark, supra.*

be granted unless the grounds therefor . . . . 'were raised in pretrial proceedings, or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial . . .', none of which was done by the defendants in this case. The issue raised by defendants in their motion for post-trial relief was not preserved in any manner, nor is it relevant to this case. It is the plaintiff's position that he is entitled to recover the full amount of the verdict awarded by the jury. Whether some other entity has a subrogation lien against plaintiff's recovery is another issue for another day. However, the record of this case clearly establishes the fact that the defendants did not preserve the issue presented in defendants' motion for post-trial relief at any pretrial proceeding or otherwise in the context of the record of this case.

"(2) The practical result of this court's order of July 18, 2001, granting defendants' motion for post-trial relief is that it permits the wrongdoer, *i.e.,* defendant Michael Regan, to escape responsibility which is contrary to the jurisprudence and public policy of this Commonwealth.

"The relief requested by the defendants and which was granted by this court violates the potential rights of others who are not parties to this litigation as the remedy ordered by this court interferes with traditional forms of subrogation, liens and the plaintiffs' legal rights to pursue all claims on behalf of the plaintiff, as well as claims of others. This case has potential implications spilling over to other arenas, such as workers' compensation, Medicare, private health insurance liens, etc. The

result ordered by this court will actually create a potential for a multiplicity of lawsuits in place of what should have been one. It is therefore against the public policy of this Commonwealth.

"In addition, the result ordered by this court by granting defendants' motion for post-trial relief is contrary to basic principles of fairness and equity. The result ordered by this court accomplishes something which is virtually unknown in American jurisprudence, *i.e.,* it rewards the wrongdoer. Mr. Regan caused the accident and harm to the plaintiff, and yet he is able to take advantage of the fact that plaintiff had purchased a policy of insurance which provided for first-party benefits. Therefore, this court is permitting the tort-feasor, Mr. Regan, to pay a mere $300 rather than the $50,300 the jury ordered him to pay.

"(3) . . . Underinsured motorist benefits have been held to be first-party benefits in Pennsylvania. *Burstein v. Prudential Property and Casualty Insurance Company,* 742 A.2d 684 (Pa. Super. 1999), en banc. Accordingly, the plaintiff may receive what is tantamount to a double recovery of damages and, the law is also very clear that a defendant wrongdoer should not benefit from any collateral benefits, including insurance benefits. *Denardo v. Carneval,* 297 Pa. Super. 484, 494-95, 444 A.2d 135, 141 (1982); *Rubin, Quinn, Moss, Heaney & Patterson v. Kennel,* 832 F. Supp. 922 (E.D. Pa. 1993). Of course, these benefits may be subject to a subrogation interest; however, the payment of collateral benefits such as UIM benefits does not diminish the legal obligation on the part of the third-party defendant, Michael Regan, to compensate the plaintiff fully

for the damages that he has caused. *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995).

"(4) . . . Plaintiff/appellant hereby incorporates by reference plaintiff's answer to defendants' motion for post-trial relief, as well as plaintiff's motion to strike defendants' petition to amend answer and new matter, plaintiff's answer and brief in opposition to defendant's petition to amend answer and new matter, and plaintiff's motion to strike the supplemental brief and affidavit submitted by defendants filed subsequent to this court's order of July 18, 2001.

"In summary, amendments should only be permitted when there is a legitimate and meritorious basis for the proposed amendment. In this case, there is no such basis for the defendant to file amended pleadings. The post-trial effort by the defendant, which was permitted by the court, was merely an attempt to 'remedy' a deficient record.

"On or about July 25, 2001, defense counsel submitted a supplemental memorandum of law in support of [defendants'] motion for post-trial relief, notwithstanding the fact that this court had already ruled on defendants' motion for post-trial relief by issuing its order of July 18, 2001. Surreptitiously attached to defendants' supplemental memorandum of law is an affidavit of Robert Edwards dated July 23, 2001 (also dated subsequent to this court's order). This is a blatant and bad faith effort by the defendants to 'recreate' the record that was never created in the first instance. This witness, Robert Edwards, was never made known to plaintiff at any time prior to or during trial, nor was the plaintiff afforded an opportunity to take this witness'

deposition to test the truth and veracity of the statements made in his self-serving affidavit on behalf of the Allstate Insurance Company. It is the plaintiff's position that this affidavit and the supplemental memorandum filed on or about July 25, 2001, should be stricken from the record and that the post-trial amendments to defendants' pleadings should likewise be stricken because they lack merit and were otherwise prejudicial to this plaintiff." (Plaintiff/appellant's statement of matters complained of on appeal, pp. 1-4.)

Plaintiffs' issues on appeal are discussed under appropriate headings below.

## 1. POST-TRIAL AMENDMENT OF PLEADINGS

Plaintiffs contend error in the court's allowing defendants to amend their answer and new matter to add the defenses of set-off and satisfaction of the judgment entered against them. (Concise statement, paragraph 4.) Plaintiffs argue that amendments should be permitted only when there is a legitimate and meritorious basis for the proposed amendment; that there is no such basis for the defendants to amend their pleadings; and that the post-trial effort by the defendants to do so was merely an attempt to remedy a deficient record. Plaintiffs tack onto this claim an assertion that defendants submitted in an untimely fashion, after the order which is the subject of this appeal had been issued, a supplemental memorandum of law supporting their motion for post-trial relief, to which memorandum was attached an affidavit from Robert Edwards, a representative from defendants' insurer, the Allstate Insurance Company. Mr. Edwards claims in the affidavit that he was unaware of

the plaintiffs' settlement with EMCASCO until after the verdict was delivered. Plaintiffs insist that the supplemental memorandum of law and Mr. Edwards' affidavit must be stricken from the record because Mr. Edwards' identity "was never made known to plaintiff at any time prior to or during trial, nor was the plaintiff afforded an opportunity to take this witness' deposition to test the truth and veracity of the statements made in his self-serving affidavit on behalf of the Allstate Insurance Company." (Concise statement, paragraph 4.)

The docket reflects that the within order was filed on July 19, 2001, and that plaintiffs' notice of appeal from that order was filed on July 27, 2001. Defendants' supplemental memorandum with the Edwards affidavit was filed on July 30, 2001, or several days after this court had lost jurisdiction of the case. It is beyond cavil that a court may not consider evidence that is not before it when a decision is handed down, and most certainly not after it has been divested of the power to rule upon a motion in which that evidence is presented. Defendants aver awareness of this fact, but claim the affidavit was provided in order to "create a record" for purposes of this appeal. Since this court no longer had jurisdiction to act upon plaintiffs' motion to strike defendants' supplemental memorandum when it was filed, it is respectfully suggested that plaintiffs should raise this objection before the Pennsylvania Superior Court.

A party may, at any time, with consent of an opposing party, or by leave of court, amend his or her pleading. Pa.R.C.P. 1033; *Somerset Community Hospital v. Mitchell & Associates,* 454 Pa. Super. 188, 685 A.2d 141 (1996); *Ecksel v. Orleans Construction Company,*

360 Pa. Super. 119, 519 A.2d 1021 (1987). "A trial court has broad discretion in ruling on a party's motion to amend the pleadings." *Somerset Community Hospital v. Mitchell & Associates, supra* at 199, 685 A.2d at 147. "An amendment will not be allowed, however, when it is against a positive rule of law, where it states a new cause of action after the statute of limitations has run, or when it will surprise or prejudice the opposing party." *Somerset Community Hospital v. Mitchell & Associates, supra* at 199, 685 A.2d at 147; *Horowitz v. Universal Underwriters,* 397 Pa. Super. 473, 580 A.2d 395 (1990).

Citing to the case authority of *City of Philadelphia v. Spencer,* 139 Pa. Commw. 574, 591 A.2d 5 (1991), plaintiffs argue the following claim of prejudice from the amendment:

"The relief requested by the defendants would interfere with plaintiff's ability to pursue separate and distinct claims and remedies available to plaintiff under the laws of this Commonwealth (*e.g.,* claims for first-party benefits, claim for delay damages, claim for payment of bill of costs, and a claim for excess liability and bad faith against defendants' insurance carrier). The relief sought by the defendants is an attempt to pervert the laws of this Commonwealth and to interfere with plaintiff's ability to pursue his lawful claims." (Plaintiffs' brief in opposition to defendants' motion to amend their answer and new matter, p. 2.)

The case of *City of Philadelphia v. Spencer, supra,* relied upon by the plaintiffs, involved the granting of the motion of the City of Philadelphia to amend its answer and new matter to add a defense of sovereign im-

munity some two years after the filing of the plaintiff's complaint contending injury on a city playground. The Commonwealth Court there held that the passage of time alone constitutes insufficient prejudice to bar an amendment, and that, in any event, the defense of immunity in that context could never be waived. *City of Philadelphia v. Spencer, supra* at 577-78, 591 A.2d at 7-8. In response to the plaintiff's insistence that such a late filing would prejudice her ability to win her case against the city if the amendment were allowed, the court wrote: "[i]f the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the *time* at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed." *City of Philadelphia v. Spencer, supra* at 577-78, 591 A.2d at 7; citing to *Bata v. Central Penn-National Bank of Philadelphia,* 448 Pa. 355, 380, 293 A.2d 343, 357 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973). (emphasis in original)

In the case sub judice, where the defenses of set-off and satisfaction could have been included in the original pleadings to this action, the plaintiffs are contending not that the lateness of the amendment will cause them prejudice, but that the amendment itself may cause them to lose prospective claims not yet brought for "first-party benefits, claim for delay damages, claim for payment of bill of costs, and a claim for excess liability

and bad faith against defendants' insurance carrier."[2] Plaintiffs cannot meet their burden of proving prejudice in this regard with contentions of an inability to either prepare for, or even to win any claims which have not arisen, and might never arise, by dint of the allowance of late amendment of the defendants' pleadings. This amendment comes as no surprise to the plaintiffs, nor has it been shown that its mere lateness caused them prejudice. It is respectfully suggested, for all of the foregoing reasons, that the amendment to defendants' answer and new matter to the plaintiffs' complaint was properly allowed.

## 2. TIMELINESS OF MOTION TO MOLD VERDICT

Plaintiffs object to the granting of defendants' motion for post-trial relief and molding of the verdict on grounds that "Rule 227.1 of the Pennsylvania Rules of Civil Procedure specifically states that post-trial relief may not be granted unless the grounds therefor . . . 'were raised in pretrial proceedings, or by motion, objection, point for charge, request for findings of fact and conclusions of law, offer of proof or other appropriate method at trial.'" (Concise statement, paragraph 1.) Plaintiffs filed a motion to strike defendants' motion for post-trial relief in which they asserted that grounds

---

2. It is clear on the face of the order appealed from that plaintiffs have been granted delay damages by this court. In addition, plaintiffs' bill of costs, which must await decision until after the conclusion of this litigation, is completely irrelevant to the matters under consideration in this appeal. It is also unlikely that plaintiffs, as third parties, could prevail in a bad faith or garnishment action against defendants' insurer. *Johnson v. Beane,* 541 Pa. 449, 453-56, 664 A.2d 96, 98-100 (1995).

for post-verdict motions are required to be presented by the conclusion of trial. However, plaintiffs neglected to mention in said motion that Pa.R.C.P. 227.1 provides, in relevant part:

"(b) Post-trial relief may not be granted unless the grounds therefor,

"(1) *if then available,* were raised in pretrial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial . . . ." (Pa.R.C.P. 227(b)(1)). (emphasis added)

The language of the rule recognizes on its face that issues, if *then* available, must be raised prior to the conclusion of trial. The issues raised in defendants' motion for post-trial relief were not available until the jury had returned its verdict. The Pennsylvania Superior Court, in *Gallop v. Rose,* 420 Pa. Super. 388, 391, 616 A.2d 1027, 1028 (1992), approved of the trial court's denial, as premature, of the defendant's pretrial motion in limine requesting the court to reduce any verdict by the amount already paid to the plaintiff in uninsured motorist benefits, because damages had yet to be determined by the jury. Because the issues raised herein directly relate to the jury's award of damages based on the evidence presented at trial, it is respectfully submitted that they were properly and timely raised and adequately preserved for appeal. Pa.R.C.P. 227.1(b)(1); *Gallop v. Rose, supra.*

### 3. MOLDING OF VERDICT TO REFLECT UNDERINSURED MOTORIST INSURANCE SETTLEMENT

Finally, plaintiffs contend that the court violated both law and public policy in reducing the jury's verdict to reflect the pretrial settlement of underinsured motorist benefits upon the plaintiffs by their insurer. (Concise statement, paragraphs 2 and 3.) The defendants had sought molding of the verdict on grounds that Pennsylvania's "one satisfaction" rule prohibits more than one recovery for injuries claimed in this accident, and that plaintiffs were collaterally estopped by their prior recovery of UIM benefits from obtaining damages in excess of the jury's award.[3] The plaintiffs argued in opposition that molding of the verdict would impermissibly reward the defendants as wrongdoers, thus prejudicing the rights of plaintiffs and all potential similarly situated litigants in violation of public policy, and would violate the "collateral source rule" prohibiting crediting "to the benefit of a wrongdoer money or services received by a plaintiff in reparation for his injury emanating from sources other than the wrongdoer." (Plaintiffs' brief in opposition to defendants' motion for post-trial relief, p. 4.) Plaintiffs' contentions are discussed seriatim under appropriate headings below.

#### a. *Public Policy Argument*

Plaintiffs contend, in paragraph 2 of their concise statement that:

---

3. It has been shown in footnote 1, *supra,* that the asserted grounds of collateral estoppel are inapplicable here.

38

"The practical result of this court's order of July 18, 2001, granting defendants' motion for post-trial relief is that it permits the wrongdoer, *i.e.,* defendant Michael Regan, to escape responsibility which is contrary to the jurisprudence and public policy of this Commonwealth.

"The relief requested by the defendants and which was granted by this court violates the potential rights of others who are not parties to this litigation as the remedy ordered by this court interferes with traditional forms of subrogation, liens and the plaintiff's legal rights to pursue all claims on behalf of the plaintiff, as well as claims of others. This case has potential implications spilling over to other arenas, such as workers' compensation, Medicare, private health insurance liens, etc. The result ordered by this court will actually create a potential for multiplicity of lawsuits in place of what should have been one. It is therefore against the public policy of this Commonwealth.

"In addition, the result ordered by this court by granting defendants' motion for post-trial relief is contrary to basic principles of fairness and equity. The result ordered by this court accomplishes something which is virtually unknown in American jurisprudence, *i.e.,* it rewards the wrongdoer. Mr. Regan caused the accident and harm to the plaintiff, and yet he is able to take advantage of the fact that plaintiff had purchased a policy of insurance which provided for first-party benefits. Therefore, this court is permitting the tort-feasor, Mr. Regan, to pay a mere $300 rather than the $50,300 the jury ordered him to pay." (Plaintiffs' concise statement of matters complained of on appeal, paragraph 2.)

Plaintiffs argue that, in molding this verdict so as to reduce it by the amount of the UIM settlement, the court allowed the defendant, Michael Regan to circumvent his obligation to the plaintiffs, thus prejudicing the potential subrogation rights of parties such as employers, workers' compensation insurance companies, health insurance companies, automobile insurance companies, and "perhaps others" not involved in this litigation. (Plaintiffs' brief in opposition to defendants' motion for post-trial relief, p. 7.) Plaintiffs further state that they do not concede the fact that their UIM carrier has any such subrogation rights, but that they have been twice placed on notice by counsel for EMCASCO that the company is seeking a credit for amounts paid to the plaintiffs. (Plaintiffs' brief in opposition to defendants' motion for post-trial relief, p. 7.) The release agreement signed by the plaintiffs upon settlement with EMCASCO discharges the company from all further actions and claims for damages resulting from this accident, and evinces its conformity with a "trust agreement" pursuant to the terms of the insurance policy, which terms are entirely unspecified in the release form. Plaintiffs also covenanted in signing the release that they had made no settlement with, nor had they prosecuted to judgment, any action against any person responsible for causing the bodily injury for which the UIM benefits had been paid. Other than any rights which might be inferred in speculating as to the contents of the so called "trust agreement," the release form is silent as to any subrogation rights that may have been asserted by EMCASCO. (See "agreement and policy release," exhibit A to defendants' motion for post-trial relief.)

Plaintiffs allege that the controlling legal authority for this issue is the case of *Warner v. Continental/CNA Insurance Companies,* 455 Pa. Super. 295, 688 A.2d 177 (1997). However, *Warner, supra,* involved the question of whether the exclusivity provision of the Workers' Compensation Act, 77 P.S. §1 et seq., precluded an employee injured during the course of his employment while driving a vehicle owned by his employer, from compelling underinsured motorist arbitration of a claim for damages under the policy covering the employer's vehicle. 77 P.S. §481.[4] The plaintiff/appellant in *Warner, supra,* had been paid $8,227.94 in workers' compensation benefits, and had settled a claim with the defendant's insurer for a sum representing the tort-feasor's policy limits of $35,000, less $2,491 for damage to the employer's vehicle. The plaintiff's employer's insurer,

_____

4. Section 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party

"(a) The liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

"(b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action. 77 P.S. §481.

Continental/CNA, denied UIM coverage based on the exclusivity provision of the Workers' Compensation Act, and the plaintiff sought to compel arbitration of the claim. The Superior Court held that the trial court was wrong in denying arbitration and that the plaintiff was not precluded by the Workers' Compensation Act from pursuing UIM benefits under the policy covering his employer's vehicle, inasmuch as there was no such exclusion in the policy. *Warner v. Continental/CNA Insurance Companies, supra* at 303-310, 688 A.2d at 181-84. The Superior Court noted in *Warner, supra,* that the 1992 amendments to the Workers' Compensation Act have repealed section 1720 of the Motor Vehicle Financial Responsibility Law, which barred an employer's right of subrogation against the tort recovery of an employee, and that there was no longer any reason to prevent an injured employee from seeking UIM benefits in addition to those available under the Workers' Compensation Act. *Warner v. Continental/ CNA Insurance Companies, supra* at 306-308, 688 A.2d at 183.

Interestingly, in stating that an employer could not be prejudiced by an award of UIM benefits to an employee due to the recently conferred right to seek subrogation of such payments, the *Warner* court also wrote that an employee's receipt of sick leave benefits, disability benefits and income loss benefits from his employer could not constitute "double dipping" if such benefits were also recovered from a tort-feasor, because these were benefits for which the employee had paid. *Warner v. Continental/CNA Insurance Companies, supra* at 310, 688 A.2d at 184-85. By way of contrast, the in-

stant action does not involve a claim for underinsurance motorist benefits under an employer's motor vehicle insurance policy, nor is there a question of whether any statutory authority allows or prohibits the plaintiffs from pursuing the same. Plaintiffs suggest that deducting the amount of their UIM recovery from the sum of the jury's verdict would somehow impact upon the right of an employer's insurer to initiate a subrogation action to recover UIM payments. However, plaintiffs agree that it is entirely clear in the law that employers' insurers are now protected by the Workers' Compensation Act from losing their rights to make a subrogation claim. (Plaintiffs' brief in opposition to defendants' motion for post-trial relief, pp. 7-8.)

It is also evident from the *Warner, supra,* opinion, that where an employee seeks to recover health, income loss and other benefits from a tort-feasor under the MVFRL, he would not be subject to a double recovery of benefits previously conferred to him as an employee because he is recouping the value of benefits for which he has already paid. *Warner v. Continental/CNA Insurance Companies, supra* at 310, 688 A.2d at 184-85, citing *Panichelli v. Liberty Mutual Insurance Group,* 543 Pa. 114, 118, 669 A.2d 930, 932-33 (1996). In recouping benefits pursuant to their UIM insurance coverage, plaintiffs have been provided benefits for which they have "paid," but the law governing non-commercial excess motor vehicle insurance coverage looks to such benefits in an entirely different light not addressed in plaintiffs' argument. Hence, plaintiffs' concern that the court's decision respective of the molding of the ver-

dict in this case would prejudice the recovery rights of employee plaintiffs of the sort who litigated the *Warner* action, *supra,* is misguided. What happened in *Warner, supra,* is completely irrelevant to the facts and circumstances of their own case.

Plaintiffs cite also to the case of *Harper v. Washington Insurance Company,* 753 A.2d 282 (Pa. Super. 2000), which is more on point, but equally unhelpful, to their position on this issue. *Harper, supra,* also involved an employee's claim for underinsured motorist coverage under a policy covering the plaintiff's employer's vehicle in which he had been injured. There, the employer's insurance policy provided UIM coverage in excess of whatever other coverage was available to the plaintiff. The tort-feasor's policy limit was $100,000, and believing his damages to be well in excess of that amount, the plaintiff in *Harper, supra,* initiated a claim for UIM benefits. A panel of arbitrators unanimously awarded plaintiff $250,000, and allowed a credit to the UIM insurer for $100,000 in the plaintiff's third-party case against the tort-feasor. The UIM insurer thereafter sought to vacate the arbitration award as impermissibly preceding litigation of the civil action against the tort-feasor because the plaintiff had yet to exhaust the limits of the tort-feasor's policy. *Harper v. Washington Insurance Company, supra,* 753 A.2d at 283. The Pennsylvania Superior Court, citing to *Boyle v. Erie Insurance Company,* 441 Pa. Super. 103, 656 A.2d 941 (1995), held that, so long as a credit is given to the UIM insurer for the amount of coverage awarded to a plaintiff through arbitration proceedings, an exhaustion clause would not prohibit arbitration of a claim for UIM

benefits from preceding a third-party court action for damages arising from the same incident.

There is no claim for UIM benefits from an employer's insurer, nor an exhaustion clause prohibiting such a claim, nor an arbitration hearing and award preceding the instant action. In this case, plaintiffs opted to settle with their UIM insurance carrier before their case against the defendants was brought to trial, having signed a release discharging EMCASCO from any and all claims for damages yet to be brought. The settlement agreement expressly stated that it was in accord with provisions of a "trust agreement," the terms of which have never been provided to the court. Plaintiffs cite to *Harper, supra,* for the proposition that the "terms of the relationship between the UIM [insurance] carrier and its insured have no bearing whatsoever on the outcome of the tort case, nor should the tort-feasor, Michael Regan, benefit from the relationship that William Shankweiler has with his UIM insurance carrier." (Plaintiffs' brief in opposition to defendants' motion for post-trial relief, pp. 8-9.) However, viewing the available evidence, plaintiffs' arrangements with their UIM insurance carrier with respect to any recovery of damages from the defendants are, at best, unclear, and there is no evidence of any "credit" to the insurer for the sum of the benefits conferred toward the recovery of damages from the defendant tort-feasors. Plaintiffs took the unique risk of settling their claim with their UIM insurance carrier before their damages from the tort claim were assessed by a jury. They now ask the court to allow them to recover both the UIM benefits and the amount of the jury's verdict on the same claims. It goes

without saying that such an absurd result could not have been contemplated, and should not be countenanced, in the law.

The Pennsylvania Superior Court revisited the propriety of conducting an uninsured motorist arbitration hearing before trial of a court action against a tort-feasor in the case of *Krakower v. Nationwide Mutual Insurance Company,* 790 A.2d 1039 (Pa. Super. 2002), *aff'd,* 2002 WL 1768067 (Pa. 2002) (Table). In *Krakower, supra,* the plaintiff sought and obtained underinsured motorist insurance benefits under her mother's policy in the amount of $50,000, with the arbitrators' directing that plaintiff issue the UIM insurer a credit in the amount of the tort-feasor's policy limit of $15,000. Thereafter, the plaintiff's case against the tort-feasor proceeded to trial, which resulted in a verdict for the tort-feasor. The UIM insurer then filed a motion to vacate the arbitration award, alleging prematurity, and plaintiff's failure to first exhaust the available limits of the tort-feasor's insurance policy before proceeding to arbitration. Citing to *Harper v. Washington Insurance Company, supra,* and referencing the credit made available to the plaintiff's UIM carrier in that case, the Pennsylvania Superior Court concluded in *Krakower, supra,* that the purpose of contractual arbitration of claims would be frustrated if it were necessary to postpone such proceedings until all third-party actions had been resolved. *Krakower v. Nationwide Mutual Insurance Company,* 790 A.2d at 1041. The court also recognized that permitting underinsured motorist arbitration matters to proceed while third-party actions are pending would lead to inconsistent results,

inasmuch as it is not uncommon for juries and arbitration panels to arrive at inconsistent results. *Krakower v. Nationwide Mutual Insurance Company,* 790 A.2d at 1041. The court further noted that, "[h]ad an arbitration award been entered in favor of the insurer and a jury verdict been rendered in favor of the insured, the insured would have no right to seek to void the arbitration ruling because it was inconsistent with the jury verdict." *Krakower v. Nationwide Mutual Insurance Company,* 790 A.2d at 1041. That outcome endorses the presumption that a prior arbitration decision in favor of a UIM carrier would have a preclusive effect on a claim for UIM coverage in excess of the tort-feasor's policy limits after delivery of the verdict.

Returning to plaintiffs' original question as to whether reducing this verdict by the amount conferred upon them in a settlement by their UIM carrier would violate public policy by allowing the defendant Michael Regan to circumvent his obligations to the plaintiffs, the cases and argument presented in this context simply do not address the issue. The Pennsylvania Superior Court has described the considerations requisite to rendering a decision on a matter alleged to be contrary to public policy as follows:

"Public policy is to be ascertained by reference to the laws and legal precedents and not from consideration of supposed public interest. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring what is or is not in accord with public policy. The phrase 'pub-

lic policy' has been used also when the courts have interpreted statutes broadly to help manifest their legislative intent." *Kmonk-Sullivan v. State Farm Mutual Automobile Insurance Company,* 746 A.2d 1118, 1123 (Pa. Super. 1999), citing *Paylor v. Hartford Insurance Company,* 536 Pa. 583, 586-87, 640 A.2d 1234, 1235 (1994).

The laws and legal precedents governing this case adduce no violation of generally accepted public policy in reducing this verdict. Any subrogation rights reserved to plaintiffs' UIM carrier, EMCASCO, are conferred not merely by contract, nor can they be removed at the whim of the court, as suggested by the plaintiffs, but are conferred by operation of law. The question arises, whether plaintiffs' settlement with EMCASCO should be declared a nullity under *Harper, supra,* and *Krakower supra,* for their failure to provide a "credit" to their carrier? Fortunately, there is law allowing for reduction of a subsequent verdict to reflect prior settlement of excess motor vehicle insurance claims.

Subrogation rights involving underinsured motorist claims are not governed by any specific statutory provision. Nevertheless, the Pennsylvania Supreme Court has held that common-law rights of subrogation are available to insurers who pay underinsured benefits to their insureds. *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995). The courts of this Commonwealth may exercise their equitable powers in reducing a verdict to reflect the difference between a jury's verdict and excess insurance benefits already paid to a plaintiff. *Gallop v. Rose, supra,* 616 A.2d at 1030-31 (legal, statutory and equitable rights to subrogation were conferred on car-

rier that asserted the right to be subrogated to all payments in excess of actual damages awarded by the jury up to the amount of payments made by the carrier under the uninsured motorist provisions of the applicable policies); *Boyle v. Erie Insurance Company, supra* at 106, 656 A.2d at 943-44 (where insured settles for less than policy limits of tort-feasor, his UIM insurer will be allowed to credit the full amounts of the tort-feasor's liability coverage against the insured's damages); *Johnson v. Beane, supra* at 456-57, 664 A.2d at 100 (equitable right of subrogation places the subrogee UIM insurance carrier in the precise position of the tort-feasor to whose rights it is subrogated, and carrier may pursue an action to recover benefits paid to its insured); *Travelers/Aetna Property Casualty Corporation v. Snell,* 1997 WL 88908 (E.D. Pa. 1997) (Pennsylvania Supreme Court held in *Johnson v. Beane, supra,* that common-law rights of subrogation are available to insurers who pay underinsured benefits to their insureds).

The goal of subrogation under Pennsylvania law is to place the burden of the debt upon the person who should be responsible for it. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he is subrogated. Thus, the insurer who paid an underinsurance claim acquires, by operation of law, the right to seek subrogation from any person the insured could have pursued who should rightly have borne the loss. *Johnson v. Bean, supra* at 457, 664 A.2d at 100; *Travelers/Aetna Property Casualty Corp. v. Snell, supra.* In the context of insurance law, the insured must be fully compensated, or "made whole," for injuries suffered before the right of subrogation on

the part of the insurer arises. *Nationwide Mutual Insurance Company v. DiTomo,* 330 Pa. Super. 117, 121, 478 A.2d 1381, 1383 (1984). Under this rubric, in providing excess underinsurance benefits to compensate the plaintiffs for injuries that defendants' automobile insurance was inadequate to cover, EMCASCO thus stood in the defendants' place in settling with the plaintiffs. Hence, the defendants, who were solidarily liable with the plaintiffs' underinsured motorist carrier to remit the damages to make the plaintiffs whole, neither evaded, nor circumvented, their obligations to the plaintiffs. Under the law governing excess automobile insurance coverage in this Commonwealth, plaintiffs had already received $50,000 in damages in the name of the defendant, and were entitled only to an award exceeding that figure after the jury had calculated the true measure of plaintiffs' damages. The plaintiffs' UIM carrier, EMCASCO, is left free to pursue its common-law subrogation rights to sums paid, if it chooses. There is no dispute that any claim EMCASCO might initiate in that regard is not presently before the court, and requires no further discussion in this appeal.

It must be observed, at this juncture, that there is scant Pennsylvania legal precedent dealing with the precise circumstances presented here. However, courts outside our jurisdiction have addressed the impact of prior receipt of uninsured or underinsured motorist benefits on an injured party's claim against a tort-feasor. See *Batchelor v. Brye,* 421 So.2d 1267 (Ala. Ct. Civ. App. 1982) (uninsured motorist benefits settled on plaintiff to compensate for deficiencies in defendant's liability coverage were properly deducted from damages as-

sessed by jury to prevent double recovery); *King v. Jordan,* 601 P.2d 273 (Ak. 1979) (uninsured motorist benefits settled on plaintiff were properly deducted from damages assessed by court pursuant to statute prohibiting double recovery); *Fertitta v. Allstate Insurance Company,* 462 So.2d 59 (La. 1985) (uninsured motorist benefits settlement was payment on insurer's solidary obligation and properly imputed to debt owed to plaintiff motorist by tort-feasor, the other solidary obligor); *Johnson v. Consolidated Freightways Inc.,* 420 NW.2d 608 (Mn. 1988) (uninsured motorist benefits settled on plaintiff were properly deducted from recovery in negligence action because state's wrongful death statute required it). Because there is no statute barring a double recovery of excess motor vehicle insurance benefits in this Commonwealth as there is in Alaska, the principles of law and public policy designed to prevent a double recovery governed the rationale for remitting the verdict here below. It is respectfully submitted that there was no error in the decision to do so.

### b. *Collateral Source Rule*

The plaintiffs contend in paragraph 2 of their concise statement that:

"Underinsured motorist benefits have been held to be first-party benefits in Pennsylvania. *Burstein v. Prudential Property and Casualty Insurance Company,* 742 A.2d 684 (Pa. Super. 1999), en banc. Accordingly, the plaintiff may receive what is tantamount to a double recovery of damages and, the law is also very clear that a defendant wrongdoer should not benefit form any collateral benefits, including insurance benefits. *Denardo*

*v. Carneval,* 297 Pa. Super. 484, 494-95, 444 A.2d 135, 141 (1982); *Rubin, Quinn, Moss, Heaney & Patterson v. Kennel,* 832 F. Supp. 922 (E.D. Pa. 1993). Of course, these benefits may be subject to a subrogation interest; however, the payment of collateral benefits such as UIM benefits does not diminish the legal obligation on the part of the third-party defendant, Michael Regan, to compensate the plaintiff fully for the damages that he has caused. *Johnson v. Beane, [supra].*" (Plaintiffs' concise statement of matters complained of on appeal, paragraph 3.)

The "collateral source rule" provides that a victim of a tort is entitled to all damages necessary to compensate him for the tort-feasor's actions, regardless of compensation the victim receives from other sources, and that such compensation may not be considered in the calculation of damages. *Boudwin v. Yellow Cab Company,* 410 Pa. 31, 188 A.2d 259 (1963). However, in advocating that the UIM benefits conferred by EMCASCO are subject to the rule, and would not constitute a double recovery of damages for the same injuries, plaintiffs again attempt to artfully dodge the law governing excess motor vehicle insurance coverage. A review of the cases relied upon by plaintiffs to support their position indicates that they are irrelevant to whether UIM insurance benefits in fact are subject to the rule as well. See *Rubin, Quinn, Moss, Heaney & Patterson P.C. v. Kennel,* 832 F. Supp. 922 (E.D. Pa. 1993) (collateral source rule applied to insurance benefits covering client funds converted by defendant); *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 476 A.2d 350 (1984) (collateral source rule inappli-

cable where bailment contract necessitated the purchase of insurance to cover damage to bailed property); *Feely v. United States of America,* 337 F.2d 924 (1964) (collateral source rule inapplicable and plaintiff with tort claim against United States could not recover value of free medical care furnished by an agency of the defendant); *Denardo v. Carneval,* 297 Pa. Super. 484, 444 A.2d 135 (1982) (collateral source rule applied to employer funded disability and medical benefits).

Equally unsupportive of plaintiffs' position is the case authority of *Burstein v. Prudential Property and Casualty Insurance Company, supra,* which they rely upon for the questionable proposition that, as first-party benefits under Pennsylvania insurance law, underinsured motorist benefits are subject to the collateral source rule. *Burstein* stands only for the proposition that, because UIM insurance benefits are first-party benefits, they follow the person and not a vehicle, and will protect the insured from the negligence of drivers with inadequate coverage regardless of the vehicle in which he or she may have been injured. *Burstein v. Prudential Property and Casualty Insurance Company, supra,* 742 A.2d at 688. There is no mention in *Burstein* of the collateral source rule at all.

Plaintiffs also seek to distinguish the holding in *Johnson v. Beane, supra,* that the collateral source rule was inapplicable to UIM insurance benefits conferred upon the plaintiffs by way of settlement with the specious assertion that in *Burstein* those benefits had been paid before trial in the court action, and here Mr. Regan has, to date, paid nothing to the plaintiffs. However, the *Johnson* court made no such distinction. The court there

held that the $50,000 in UIM benefits previously provided to the plaintiff by her automobile insurance carrier, taken in combination with the $25,000 policy limits of the defendant completed, and would not be added to, the $75,000 remitted judgment awarded by the court, because the UIM benefits had not reduced the amount of damages for which the defendant was liable. *Johnson v. Bean, supra* at 456, 664 A.2d at 100. The court emphasized that the defendant indeed remained liable for $50,000, but left open the question, to whom? The court went on to state that, pursuant to the equitable doctrine of subrogation, the plaintiff's UIM carrier stood in her shoes and could pursue an action of its own to recover the amount paid to the plaintiff. *Johnson v. Beane, supra* at 456, 664 A.2d at 100. Therefore, under *Johnson v. Beane, supra*, the collateral source rule would not require this court to reduce the jury's verdict by the amount already paid to the plaintiffs by EMCASCO, because the liability of the defendants was not reduced thereby. Defendants remain liable for $50,000 of those damages. The question as to whom they are liable is not before the court.

## CONCLUSION

It is well established in this Commonwealth that a plaintiff is limited to one satisfaction for a single injury. *Franklin Decorators Inc. v. Kalson,* 330 Pa. Super. 140, 143, 479 A.2d 3, 4 (1984); *Rossi v. State Farm Automobile Insurance Company,* 318 Pa. Super. 386, 390, 465 A.2d 8, 10 (1983) (plaintiff who was fully compensated for injuries under liability portion of motor vehicle insurance policy cannot thereafter claim

same damages under uninsured motorist provision of same policy). This rule is based upon the theory that a duplicate recovery will result in unjust enrichment. In the context of excess motor vehicle insurance coverage, where there are equitable and common-law rights to subrogation, EMCASCO's payment of underinsured motorist insurance benefits to the plaintiffs before their court action proceeded to verdict did not reduce defendants' liability for damages to make the plaintiffs whole. Although the issue of EMCASCO's ability to recoup these benefits is not before the court, it nevertheless provides a proper basis under the applicable law for molding this verdict. Even though there are *no* legal precedents directly on point with the instant facts and circumstances, it is respectfully submitted that ample guidance in this regard can be found in those cited from the foregoing foreign jurisdictions. Further, it is urged that the extant legal and equitable factors attendant to consideration of the issues here presented militate toward upholding the judgment of this court. *Walls v. City of Pittsburgh,* 292 Pa. Super. 18, 436 A.2d 698 (1981).

For all of the foregoing reasons, it is respectfully submitted that no error or abuse of discretion was committed by this court in allowing for the amendment of defendants' pleadings after the conclusion of trial, in entertaining defendant's motion for post-trial relief raising an issue not presented at trial, and in reducing this verdict by the amount of underinsured motorist insurance benefits paid to the plaintiffs.