**Reed v. Allied Signal Inc.**

*Marc P. Weingarten, Joseph J. McGill,* and *Stefanie G. Ebert,* for plaintiff.

*Peter J. Neeson,* for defendant Allied Signal.

LEVIN, *J.*, December 22, 2010—

## I. FACTUAL AND PROCEDURAL HISTORY

The instant case was tried by jury in May, 2009, on a reverse bifurcated basis within the Mass Tort Program

of the Court of Common Pleas of Philadelphia before the Honorable Stephen E. Levin.

Frederick Lewis testified at deposition prior to his death from mesothelioma that he had worked for approximately 22 years as a brake mechanic, which involved changing brakes which contained asbestos. Mr. Lewis removed old brakes, installed new brakes, and ground, sanded and riveted brakes under repair thereby releasing asbestos dust into the air on a regular basis over the course of Mr. Lewis's career as a brake mechanic from 1933 to 1955. There was expert testimony that mesothelioma may have a lengthy latency period before it manifests itself. Medical records and expert testimony established that Mr. Frederick died as a result of mesothelioma.

On May 27, 2009, in the phase I damages portion of the trial, the jury found that asbestos exposure was the factual cause of plaintiffs' decedent, Frederick Lewis's, mesothelioma; and awarded damages in the amount of $492,007.00.

Subsequently, on June 2, 2009, the jury found, in the phase II liability portion of the trial, for Marlene Reed, individually, and as personal representative for the Estate of Frederick Lewis, deceased, and Margaret Lewis in her own right (hereinafter "plaintiffs"), against defendant Honeywell International Inc., formerly known as Allied Signal Inc., as successor in interest to the Bendix Corporation (hereinafter "Honeywell"). Plaintiffs then filed a motion for delay damages on June 11, 2009 to which defendant, Honeywell, filed a response in opposition to

delay damages. In addition, Honeywell filed timely motion for post trial relief on June 12, 2009, in the nature of a motion for J.N.O.V., or alternatively, for a new trial on phase II only. Argument on post trial motions was heard before the Honorable Stephen Levin on July 22, 2010.

On September 1, 2010, this court denied Honeywell's post trial motions for J.N.O.V. and new trial, but molded the verdict to reflect funds received from bankruptcy trusts, and awarded delay damages pursuant to a court order docketed September 7, 2010 as follows:

And now, this first day of September, 2010, upon consideration of defendant, Honeywell International Inc.'s motion for post-rrial relief in the nature of a motion for judgment notwithstanding the verdict, and Honeywell International, Inc.'s motion for a new trial in phase II, pursuant to Pennsylvania Rule of Civil Procedure 227.1, and any response thereto, it is hereby ordered that defendant's motion for JNOV and defendant's motion for a new trial in phase II are both denied.

Defendant Honeywell International, Inc.'s alternative motion to mold the verdict of $492,007.00 to reflect plaintiffs' settlements received from the following section 524(g) bankruptcy trusts is granted as follows.

| | |
|---|---|
| Manville | $26,250.00 |
| Celotex | $18,583.00 |
| Armstrong | $22,000.00 |

| | |
|---|---|
| U.S. Gypsum | $69,750.00 |
| National Gypsum | $12,510.00 |
| Total Bankruptcy Settlements | $149,093.00 |

The trust distribution claims and resolutions procedures of Armstrong World Industries, Inc.; United States Gypsum, and NGC (National Gypsum Company) Bodily Injury Trust are hereby incorporated into the record, and made a part of defendant Honeywell's August 6, 2010 filing as Exhibits E through G thereto.

The verdict of $492,007.00 is hereby molded for a net verdict amount of $342,914.00 based on the pro tanto reduction of the verdict by each of the above bankruptcy trust settlements pursuant to the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa. C.S. Section 8326; *Andalorro v. Armstrong World Industries,* 799 A.2d 71 (Pa. Super. 2002); and *Baker v. A, C & S. Inc., et al.,* 562 Pa. 290, 755 A.2d 664 (Pa. 2000). It is further ordered, pursuant to Pa. R.C.P. 238, that plaintiffs are entitled to delay damages. Accordingly, the delay damages set forth below have been calculated upon the molded verdict amount of $342,914.00.

Delay damages are hereby awarded pursuant to Pa. R.C.P. 238 based on the prime rate as published in the first yearly edition of the *Wall Street Journal* for each pertinent year, plus one percent not compounded, using the molded verdict of $342,914.00 as the basis as follows:

November 27, 2007 to Dec. 31, 2007

| | |
|---|---|
| at 9 1/4 % | $3041.60 |
| January 1, 2008 through December 31, 2008 at 8 1/4% | $28,290.41 |
| January 1, 2009 through June 2, 2009 at 4 1/4% | $6,109.04 |
| Total Delay Damages | $37,441.05 |

Judgment was entered, upon praecipe by Honeywell, on the molded verdict, in the combined amount of $380,355.05, on September 28, 2010; from which Honeywell filed an appeal the next day with respect to the denial of Honeywell's post trial motion for J.N.O.V. or a new trial. On October 11, 2010, plaintiffs filed an appeal of the September 1, 2010 order, first opposing the molding of the verdict to reflect funds received from the bankruptcy trusts, and secondly against the calculation of delay damages after molding the verdict, and against the September 28, 2010 entry of said verdict as a judgment. The parties then filed Rule 1925 (b) statements of matters complained of on appeal.

Thus, Honeywell appeals the denial of J.N.O.V., or alternatively, requests a new trial, but does not appeal the calculations of the trial court with respect to molding the verdict, or delay damages, in the event the denial of its post trial motions is upheld. Plaintiffs, on the other hand, do not appeal the verdict. Plaintiffs appeal only on grounds that the verdict should not have been molded as it was, and they contend that delay damages should not have been

calculated on a reduced, (molded) verdict. For purposes of judicial economy, this opinion will first address the reasons why Honeywell's appeal with respect to J.N.O.V., or new trial should be denied. The opinion will then discuss the reasons of the trial court for molding the verdict by subtracting bankruptcy trust settlements and calculating delay damages as it did on the molded verdict.

## II. DISCUSSION

A. *The Court Properly Denied Honeywell's Motion for J.N.O.V., or in the Alternative for a New Trial*

Defendant Honeywell raised several issues in its post trial motions, and in its 1925 (b) statement.

First, Honeywell argued that the rule of coordinate jurisdiction applies such that an order entered by Philadelphia Court of Common Pleas Judge Tereshko in a *Frye* motion in another case mandates that plaintiffs' expert testimony be precluded in this case. This would have left plaintiff without an expert on the type of asbestos fibers used in brake linings as being causally related to mesothelioma.

Honeywell also argued in its post-trial motions that plaintiffs' expert, Dr. Frank, used a novel methodology and should be precluded under *Frye* for this reason as well. Defendant also states that plaintiffs' expert propounded a de-minimus "each and every breath" theory, and that this theory is precluded by case law.

Next, defendant contended that the bankrupt manufacturers should have been on the verdict sheet.

Honeywell maintained that asbestos insulation, not the brakes manufactured by Honeywell, is the cause of mesothelioma. Defendant also argued that the shorter fibers in brake linings have not been shown to be a cause of mesothelioma, based on epidemiological studies utilized by its own expert. Taking the issues raised by Honeywell in seriatum:

The trial court was not was bound by the September 24, 2008 *Frye* ruling made in *In re asbestos litigation* by Judge Tereshko, merely because said ruling was made in the Philadelphia court of common pleas. Honeywell's interpretation of Judge Tereshko's ruling is far too broad. Judge Tereshko's evidentiary ruling was fact specific to the cases before him. It was not a global ruling applicable to all *Frye* motions heard in the Complex Litigation Center of the Philadelphia Courts, which has not adopted Judge Tershko's *Frye* ruling as such. In the instant case, Judge Levin, based on the facts and expert testimony in the cases presented to him, ruled that there was a jury question as to whether the facts supported whether or not the products manufactured by Honeywell were a substantial factor in causing injury to plaintiff. It was simply a question of case specific fact not law.

Further, in the case sub judice, plaintiffs enumerated the bases by which Dr. Frank, plaintiffs" expert, arrived at his conclusion, including review of the case materials, review of all of the decedent's medical records, review of scientific and medical literature with respect to chrysotile asbestos fibers contained in brake linings, clinical experience, review of epidemiological literature,

information about the latency period of mesothelioma, his own research in the asbestos field, and a review of plaintiffs' depositions with respect to exposure. Plaintiff maintained that the defense expert, Dr. Case, testified that he used many of the same methods to arrive at his opposite conclusions. Significantly, plaintiffs' counsel also points out that plaintiffs' decedent, Frederick Lewis, worked on brakes for 22 years, and that his exposure to asbestos from brake lining was cumulative, not a limited exposure.

Honeywell conflates the arguments it made in support of its *Frye* motion with the actual *Frye* test. At issue in a *Frye* motion is whether the expert's theory is novel, and if so whether the methodology used is generally acceptable. The level of exposure is generally a fact question for the jury. There is nothing inherent in friction products that makes them immune to asbestos litigation, contrary to the gist of Honeywell's arguments. The issue is whether the theories and methodologies advanced by the proffered expert pass scientific muster so as to be a legitimate battle of experts. This is made abundantly clear recently, by the Superior Court in the case of *Betz v. Pneumo Abex, LLC, et al.* 998 A.2d 962 (Pa. Super. 2010), where the Superior Court reversed the Allegheny County trial court's granting of summary judgment. In *Betz*, Allied Corporation, successor in interest to Bendix, made exactly the same arguments that Honeywell makes in its concise statements of matters complained of on appeal. The Superior Court, just this year, found that the trial court should have denied what defendant characterized as a global *Frye* motion for reasons set forth at length in

*Betz.* In fact, the Superior Court in *Betz* found the case of *Gregg v. V-J Auto Parts*, 596 Pa. 274, 943 A.2d 216 (Pa. 2007), which Honeywell relies upon here, inapplicable for purposes of a deciding a very similar *Frye* motion.

There was no abuse of discretion or error of law in permitting plaintiff's experts to testify, as the classic battle of experts involving questions of fact for the jury to resolve. There was sufficient evidence in Phase I to allow the question of whether or not the mesothelioma could have been caused by chrystolite asbestos fibers found in friction products. In essence, Honeywell seeks a finding of fact by the court that friction products containing asbestos cannot cause mesothelioma. This scientific dispute is a question of fact for the jury to resolve. Honeywell's arguments for J.N.O.V., or alternatively for a new trial, on the above grounds are without merit. The trial court's denial of same should be upheld.

Additionally, it is well settled that bankrupt asbestos manufacturers should be excluded from the verdict sheet. Honeywell does not produce any precedent that would supersede the Superior Court holding in *Ball v. Johns-Manville Corporation*, 625 A.2d 650 (Pa. Super. 1993). Case law holds that bankrupt asbestos manufacturers are not to be placed on the verdict sheet in asbestos cases, period. The trial court was bound to follow precedent on the verdict sheet issue.

Finally, Honeywell also filed a post trial motion, in the event of denial of above motions, that there should be a pro-tanto set off as to all the bankruptcy trusts (from

which plaintiffs admitted in response to a court discovery order receiving funds), and that the verdict be molded accordingly as to Johns-Manville, Armstrong, Celotex, and American Gypsum. Honeywell further moved for delay damages to be calculated based on the molded verdict. Honeywell's motions to mold the verdict and to base delay damages on the reduced amount were granted by the trial court for the reasons set forth below.

B. *The Court was Correct in Molding the Verdict to Reflect Funds Received from Bankruptcy Trusts*

Pennsylvania Rule of Civil Procedure 227.1 gives the trial court the authority to modify a jury's decision or to enter any other order that is appropriate. Further, trial courts may exercise their equitable powers by reducing a verdict to reflect the difference between a jury's verdict and excess funds already paid to a plaintiff. See: *Gallop v. Rose*, 616 A.2d 1027, 1030-31 (Pa. Super. 1992); *Boyle v. Erie Ins. Co.*, 656 A.2d 941, 943-44 (Pa. Super. 1995); *Johnson v. Beane*, 541 Pa. 449, 455, 664 A.2d 96,100 (Pa. 1995).

Defendant's alternative post trial motion for a pro tanto set off with respect to all enumerated bankruptcy trusts was granted. The jury verdict and judgment were molded to reflect a pro tanto set off for all funds received by the plaintiff from Johns-Manville and Asbestos Settlement Trust/Celotex (which plaintiff does not dispute), as well as from Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, United States Gypsum Asbestos Personal Injury Trust, and NGC Bodily Injury Trust.

The main question posed to the court was whether there was a distinction to be made between the settlement releases, entered into by the Johns-Manville Trust, and the Asbestos Settlement Trust (Celotex), from the bankruptcy trust distributions by other defendants, who have settled through their respective bankruptcy trusts.

Significantly, plaintiffs agreed at the July 22, 2010 hearing on post trial motions that both the Johns-Manville Bankruptcy Trust and the Asbestos Settlement Trust (successor to the Celotex Corporation) had paid out funds to plaintiffs through the trust distribution process ("TDP"). Plaintiffs did not dispute that both the funds paid by Johns Manville, in the amount of $26,250.00, and Celotex, in the amount of $18,583, could be deducted from the judgment in order to mold the verdict pro tanto based on the language of the releases. Nor did plaintiffs dispute the calculation of delay damages based on this reduction. However, plaintiffs dispute the deduction of bankruptcy trusts settlements of Armstrong, US Gypsum and National Gypsum from the verdict. Honeywell argues that these same bankruptcy trust settlements should be deducted pro tanto from the judgment, and that the verdict should be molded accordingly.

Plaintiffs post-trial argument focused on provisions of the releases that permit actions for contribution where there has been a verdict or a settlement by other defendants. Plaintiffs have failed to show that there is a significant distinction between the releases of Johns Manville and Celotex and the other bankruptcy settlement trusts. The trial court found that two of the bankruptcy trust settlement

releases contain language that is substantively that of a pro tanto release, and the third comes close to such language. Pursuant to the Uniform Contribution Among Tortfeasors Act, as applied in the Commonwealth of Pennsylvania, where a release does not specify a pro rata apportionment of damages in the event of litigation, the release defaults to a pro tanto release and should be interpreted as such by the courts.

In support of its position, Honeywell attached the releases and trust disposition documents for Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; United States Gypsum Asbestos Personal Injury Trust, and NGC Bodily Injury Trust to its second supplemental brief. The attached release and indemnity agreements stipulate that claimant for the bankruptcy trust settlement funds will hold releasees harmless and indemnify them from liability. Further, the releases stipulate that any judgment against other defendants, that includes the trust as a joint tortfeasor, shall be reduced no more than the actual amount paid as consideration for the release.

This court entered a judgment that did not include the trusts as joint tortfeasors, since they could not be entered on the verdict sheet. However, pursuant to an order by Judge Moss, as coordinating Judge of the Mass Tort section of the Complex Litigation Center, plaintiffs were required to disclose the amounts they received from the bankruptcy trusts.

The plaintiffs have now disclosed the amounts received, which should be deducted from the jury

verdict, based on the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa. C.S. Sections 8321-8327 ("UCATA") which provides that:

> A release by an injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, *but reduces the claim against other tortfeasors in the amount of consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.* (emphasis supplied) 42 Pa. C.S. Section 8326.

It is well established that defendants, who have previously settled with and been released by a plaintiff, are to be listed on the verdict sheet for purposes of implementing the UCATA. However, the Pennsylvania Superior Court, in *Ball v. Johns Manville Corp.*, 624 A.2d 650 (Pa. Super. 1990), held that bankrupt parties could not be listed on the verdict sheet because it would be a violation of the bankruptcy stay order. The Superior Court in *Ball* did recognize the UCATA. In *Ball*, as many as 11 of the original defendants were at various stages of bankruptcy. The Superior Court in 1992 found that there was nothing which precluded the solvent defendants in asbestos litigation from seeking contribution from the bankrupt defendants upon emergence from reorganization.

Plaintiffs here argue that contribution is appropriate, but not a verdict reduction. But since 1992 there have been a number of developments in bankruptcy and asbestos

litigation which obviate against contribution as the best remedy for implementing the goals of the UCATA.

First, the Pennsylvania Supreme Court has stated that the UCATA allows a verdict reduction based on the trust distribution process as the most equitable distribution of bankruptcy trust assets. See *Baker v. ACandS*, 562 Pa. 290, 755 A.2d 664 (Pa. 2000).

> The TDP allows a claimant upon meeting certain threshold requirements, to treat the Trust as a "legally responsible tortfeasor" without introduction of further proof; deems the Trust to be a settled joint tortfeasor; limits the rights of co-defendants to obtain contribution against the Trust to a narrow set of circumstances; and in some instances permits co-defendants to obtain a reduction in verdict in respect to the Trust, whether or not the claimant's direct claim against the Trust has been resolved. *Id* at 308, 755 A.2d at 674.

Second, bankrupt asbestos entities have been establishing trusts with specific trust disposition procedures under Section 524 (g) of the Bankruptcy Code to pay out specific amounts depending on injury and mortality considerations to individuals who claim damages due to asbestos exposure. Many of these trusts have actually seen a growth in the reserves, by some estimates to $30 billion. The trusts have been organized to pay asbestos claimants compensation for diseases caused by asbestos exposure from specific products by having claimants file an application and verification of exposure which expedites recovery for potential plaintiffs. It is not uncommon for a person

who can show exposure to asbestos to make application to several bankruptcy trusts, and to simultaneously sue other, non-bankrupt, manufacturers, often more than one, in civil court proceedings. Thus, one individual or estate has two avenues of recovery; the 524(g) bankruptcy trusts administrative procedure, as well as civil lawsuits. This has led to the potential of double recovery, as there has only been haphazard reporting, if at all, by plaintiffs of funds received from bankruptcy trusts, despite recoveries also received at trial. Since juries as fact finders determine asbestos related damages in bifurcated trials in the Complex Litigation Center of Philadelphia County, the damages to a plaintiff can be determined as a sum certain. But since bankrupt companies, unlike settling defendants, may not be placed on the verdict sheet, the total recovery available to many plaintiffs exceeds the damage amount set by the jury during Phase I asbestos trials.

Here, the releases allow Honeywell, which was found liable at trial, to pursue contribution, but the trust releases stipulate that the plaintiffs hold the trusts harmless and indemnify them from liability. Here, plaintiffs have already received funds from the bankruptcy trusts. It would simply be a waste of time and resources to require Honeywell to seek contribution from the trusts. The money from the trusts has already been received by the plaintiffs; for them to return it to the trusts, which would then give the funds to Honeywell, so that Honeywell could then pay the entire verdict, is bureaucratic and expensive. Moreover, such a procedure could further delay compensation for the plaintiffs. Pursuant to *Baker* and the UCATA, the verdict

should simply be molded on a pro tanto basis as specified and/or implied by the releases, then paid by Honeywell after the reduction of the jury verdict by bankruptcy trust settlements accordingly.

Plaintiffs argument that evidence was not presented at trial as to the exposure of plaintiffs' decedent to asbestos containing products of Johns-Manville Trust, and the Asbestos Settlement Trust (Celotex), as well as from Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, United States Gypsum Asbestos Personal Injury Trust, and NGC Bodily Injury Trust is without merit on its face. Plaintiffs accepted bankruptcy trust money from Johns-Manville Trust, and the Asbestos Settlement Trust (Celotex), as well as from Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; United States Gypsum Asbestos Personal Injury Trust, and NGC Bodily Injury Trust. Plaintiffs cannot now come before this court and argue that there was no evidence of exposure to asbestos from said manufacturers' products presented at trial in order to effect a double recovery. Plaintiffs applied to the bankruptcy trusts based on the fundamental contention that they were liable for plaintiffs' decedent's mesothelioma. Plaintiffs had to have claimed exposure to each of the products of the above entities on the claims forms of all of them pursuant to the trust disposition process.

Further, bankruptcy law prevents the introduction of evidence against bankrupt manufacturers in civil trials, but balances this with the trust distribution process. Here, the trial court is required by the bankruptcy laws

to exclude settling bankrupt defendants from the verdict sheet. The only reason to include evidence as to settling defendants during trial is to establish whether or not there is liability so that damages can be properly apportioned. In the instant case damages have already been paid by the settling bankrupt defendants to the full extent that they can be held liable under the bankruptcy laws based on their respective trust disposition documents. Plaintiffs' interests are protected by the pro tanto releases themselves, as well as by any release that is not explicitly pro tanto. See *Ball v. Johns-Manville Corporation*, 624 A.2d 650 (Pa. Super. 1993). As stated in *Brandt v. Eagle, MD*, 602 A.2d 1364 (Pa. Super. 1992):

> The common law has traditionally attached great significance to the entry of a satisfaction of judgment. A plaintiff who is injured at the hands of more than one tortfeasor may sue and recover a judgment against any or all of the tortfeasors and may attempt to collect the damages awarded by the judgment against any or all of them. However, although a plaintiff may obtain a judgment against several of the tortfeasors for the same harm, he or she is entitled to only one satisfaction for that harm. *Brandt* at 1367.

Here, to allow the plaintiffs to retain the funds obtained from five bankruptcy trusts, for the same injuries for which a judgment is to be entered by this court, would be to allow plaintiffs to obtain multiple satisfactions for the same injury. Instead, the trial court molded the verdict taking into account the funds paid to plaintiffs by the bankruptcy trusts. The total amount received by plaintiffs

from the bankruptcy trusts and Honeywell is, therefore, equal in amount to the total verdict of the jury, which was merely molded to reflect the money already received by the plaintiffs.

C. *Delay Damages Were Properly Calculated Based on the Molded Verdict*

Pursuant to PA R.C.P. 238, delay damages are available at the request of the a plaintiff in a civil action, where a defendant has been found liable, based on a verdict of a judge or jury, for the period of time from a date one year after the date of original service to the date of verdict where there has been no written offer of settlement pursuant to the rule. See Pa. R.C.P. 238.

The second issue plaintiffs complains of on appeal in their Rule 1925 (b) statement is, according to plaintiffs, that even if it is conceded that the verdict should have been molded to reflect the funds received from bankruptcy trusts, that delay damages should have been calculated using the non-molded verdict as the basis for the court's delay damages calculations. To the contrary, the policy underlying the award of delay damages mandates that they should be calculated based on the molded verdict to reflect funds hitherto received by a plaintiff as made clear by the language and commentary of Pa. R.C.P. 238 itself. Essentially, plaintiffs have already recovered and received funds from the settling bankruptcy trusts prior to the jury verdict. Plaintiffs had the use of these previously recovered funds, and, therefore, should not receive interest on previously recouped funds.

Delay damages are simply pre-judgment interest on what is, essentially, plaintiff's money for the period of time defendants had use of the money prior to the determination of a verdict.

Delay damages are not a penalty, rather, they are a charge against defendants who had an opportunity to protect themselves from incurring delay damages by making a reasonable offer of settlement in good faith and in timely fashion. See *Santana, et al. v. Lucas*, 79 Pa D. & C. 4th 336, 351 (Phila. CCP 2005), citing *Craig v. Magee Memorial Rehabilitation Center*, 582 A.2d 1376 (Pa. Super. 1990). As the Philadelphia County trial court stated in *Santana*, delay damages are merely pre-judgment interest:

> Fundamental fairness would require ... that plaintiffs receive interest on what is essentially their money for the period that it is held by the defendants ... who had use of that money... Awarding delay damages under such circumstances does not penalize defendants... because they had the opportunity to protect themselves from exposure to delay damages by making a reasonable offer of settlement in good faith in a timely fashion. *Santana* at 351 citing *King v. Southeastern Pa. Trans. Authority*, 557 A.2d 11,12 (Pa. Super. 1989).

Conversely, where plaintiffs have received money in advance of a jury verdict from the bankruptcy trust distribution process, fundamental fairness requires the reduction of the verdict by the amount of the money received thereby.

Moreover, fundamental fairness requires that there be no delay damages charged on the money which has been received. See *Hughes v. GAF Corp.*, 528 A.2d 173 (Pa, Super. 1987), which also involved asbestos litigation in Philadelphia County:

In 1976, appellee James Hughes brought suit against various asbestos manufacturers for personal injuries allegedly caused by exposure to asbestos products. Lois Hughes, his wife, joined in the suit claiming loss of consortium. After a non-jury trial in 1984, a jury trial de novo was held before Judge Caesar of the Philadelphia Court of Common Pleas. The jury returned a verdict of $284,975 for James Hughes and $10,200 for Lois Hughes against defendants GAF, Eagle-Picher, Keene, Owens-Corning Fiberglass, and Pittsburg Corning. Since all of the companies except GAF had settled prior to the trial, Judge Caesar molded the verdict against GAF to the amount of $56,995 in favor of James Hughes and $2,040 in favor of Lois Hughes. *Hughes* at 174.

Based on the above facts, the Superior Court found that the verdict should be molded to reflect money received from the settling defendants and that delay damages should be calculated on the reduced, molded verdict:

The plaintiffs have cross-filed an appeal on the issue of whether delay damages should be calculated on the total verdict rather than on the molded portion of the verdict only. Plaintiffs cite the rationale of Rule 238, interpreted in *Laudenberger*, supra, as the reason for

calculating delay damages on the total verdict.

Although the intent of Rule 238 is to encourage early settlements, we find it "unrealistic to require each defendant to offer nearly the full amount of damages ultimately recovered in an action where the amount finally attributed to each defendant is only a percentage of the total. *Korn v. Consolidated Rail System*, 512 A.2d 1266, 1268 (Pa. Super. 1986) (citing *Richardson v. LaBuz*, 474 A.2d 1181, 1196 (Pa. Cmwlth. 1984). Furthermore, this court finds that "it would be anomalous to award a plaintiff delay damages on money already received from settling defendants." *Korn*, 512 A.2d 1266, 1268 (Pa. Super. 1986) (citing *Rocco v. Johns-Manville Corp.*, 754 F 2d 110, 118 (3rd Cir. 1985); see also *Baciotti v. Simmons*, 498 A.2d 1351 (Pa. Super. 1985), delay damages must be apportioned in the same manner in which the jury apportioned liability. The trial court properly awarded delay damages based upon only the molded portion of the verdict. *Hughes* at 176-177.

In *Hughes*, all the defendants but one settled prior to trial, and the court molded the verdict to reflect the deduction of the settlement amounts. The Superior Court then used the reduced verdict as the basis for calculating delay damages. The Superior Court held that the plaintiff should not be allowed to receive additional delay damages on money already received from settling defendants. The Philadelphia County asbestos litigation sub-judice is analogous, only here, rather than pretrial settling defendants, bankrupt manufacturers have settled liability claims at a discounted bankruptcy rate based on the trust

distribution process.

As reflected in the dockets for this case, plaintiffs Frederick and Margaret Lewis commenced this personal injury action by filing a complaint in the Philadelphia County Court of Common Pleas. Original process was served on November 21, 2006. The jury awarded a verdict of $492,000 in favor of plaintiffs and against defendant, Honeywell. No written offer was ever made by the defendant.

Therefore, the trial court awarded delay damages pursuant to Pa. R.C.P. 238 based on the prime rate as published in the first yearly edition of the *Wall Street Journal* for each pertinent year, plus one percent not compounded, using the molded verdict of $342,914.00 as the basis. Since plaintiffs have had the use of the bankruptcy trust settlement funds, the calculation of delay damages was properly based on the verdict as molded by the court, which reflects the subtraction of settlement funds previously received from the bankruptcy trusts.

### III. CONCLUSION

For the reasons set forth above the trial court's denial of defendant, Honeywell's post trial motion for J.N.O.V., or in the alternative for a new trial, should be upheld. The trial court's molding of the verdict to reflect funds received from settling defendants and bankruptcy trusts should be upheld. The calculation of delay damages using the molded verdict as the basis, should also be upheld.